**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MONTWAY LLC d/b/a MONTWAY AUTO TRANSPORT, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:25-cv-13100 |
| v. | ) ) | |
| NEXUST AT LLC d/b/a NEXUS AUTO TRANSPORT Defendant, | ) ) ) ) | |

## <u>DEFENDANT'S 12(b)(6) MOTION TO DISMISS</u>

COMES NOW, Defendant Nexus AT LLC d/b/a Nexus Auto Transport ("Nexus"). through the undersigned counsel, and moves to dismiss Plaintiff's, Montway LLC, d/b/a Montway Auto Transport ("Montway"), Complaint at Law under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of this Motion, Defendant states the following:

i

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS .........................................................................................1

III. ARGUMENT .............................................................................................................4

    a. Legal Standard ....................................................................................................4

    b. Montway's claims fail ........................................................................................5

    c. Count I – Lanham Act False Advertising (15 U.S.C. § 1125(a)) ......................6

        i. No false statements of fact. .........................................................................7

        ii. No Plausible Allegation of Deception of fact. ............................................8

        iii. No Materiality of Influence on Purchasing Decisions ...............................8

        iv. No alleged or plausible injury ....................................................................9

        v. Not "Commercial Advertising or Promotion" ...........................................10

    d. Count II – Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510) .......12

    e. Count III – Illinois Consumer Fraud Act (815 ILCS 505) ....................................13

        i. No deceptive act or Practice ......................................................................14

    f. Count IV – California Unfair Competition Law....................................................17

    g. Count V – Federal Trademark Infringement (14 U.S.C. 1114(1) ......................18

        i. Likelihood of confusion..............................................................................19

    h. Count VI – Federal Trademark Dilution (15 U.S.C. § 1125(c)) ...........................20

    i. Count VII – Injunctive Relief .................................................................................22

IV. CONCLUSION.........................................................................................................23

ii

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### Cases

*Abbott Lab'ys v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) ................................................................................................. 7

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ............................................................................................ 4

*Ash v. PSP Distribution*, LLC,
  2023 IL App (1st) 220151, 226 N.E.3d 748 .................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................... 5

*Athey Prods. Corp. v. Harris Bank Roselle*
  89 F.3d 430, 436-37 (7th Cir. 1996) ............................................................................. 15

*AutoZone, Inc. v. Strick*,
  543 F.3d 923 (2008)....................................................................................................... 19

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
  168 F.3d 967 (7th Cir.1999)............................................................................................ 6

*Beardsall v. CVS Pharmacy, Inc.*,
  953 F.3d 969 (7th Cir. 2020) ........................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................... 4

*Bidi Vapor, LLC v. Vaperz LLC*,
  543 F. Supp. 3d 619 (N.D. Ill. 2021) .............................................................................. 7

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*,
  805 F. Supp. 2d 503 (N.D. Ill. 2011)............................................................................ 21

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012).......................................................................................... 5

*Buetow v. A.L.S. Enterprises, Inc.*,
  650 F.3d 1178 (8th Cir. 2011) ........................................................................................ 7

*CAE, Inc. v. Clean Air Engineering, Inc.*,
  267 F.3d 660 (2001)....................................................................................................... 19

*Caracci v. Am. Honda Motor Co., Inc.*,
  726 F. Supp. 3d 840 (N.D. Ill. 2024) ........................................................................... 13

*CDOC, Inc. v. Gradient Ins. Brokerage, Inc.*,
  No. 20 CV 01396, 2025 WL 3050980 (N.D. Ill. Sept. 16, 2025) ................................ 12

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal.4th 163 (1999) .............................................................................................. 17, 18

*Chandler v. American General Finance, Inc.*,
  329 Ill.App.3d 729 (2002).............................................................................................. 14

*Crabtree v. Experian Info. Sols., Inc.*,
  948 F.3d 872 (7th Cir. 2020).......................................................................................... 9

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) ........................................................................................ 13

*Doctor's Data, Inc. v. Barrett*,
  170 F. Supp. 3d 1087 (N.D. Ill. 2016).......................................................................... 21

*Dyson, Inc. v. Sharkninja Operating LLC*,
  259 F. Supp. 3d 816 (N.D. Ill. 2017) ............................................................................. 6

*e-ImageData Corp. v. Digit. Check Corp.*,
  No. 15-CV-658, 2018 WL 1411226 (E.D. Wis. Mar. 21, 2018) ................................... 9

*Eli Lilly & Co. v. Nat. Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) ............................................................................................... 21

*Elson v. State Farm Fire & Cas. Co.*,
295 Ill.App.3d 1, 229 Ill. Dec. 334, 691 N.E.2d 807 (1998) ............................................ 13

*Epic Sys. Corp. v. YourCareUniverse, Inc.*,
244 F. Supp. 3d 878 (W.D. Wis. 2017).............................................................................. 19

*ExeGi Pharma, LLC v. Brookfield Pharms., LLC*,
663 F. Supp. 3d 880 (E.D. Wis. 2023)................................................................................. 9

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir.2002) ................................................................................................... 11

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, Inc.,
560 F.2d 1325 (7th Cir.1977) .............................................................................................. 19

*Holbrook Mfg LLC v. Rhyno Mfg. Inc.*,
497 F. Supp. 3d 319 (N.D. Ill. 2020) .................................................................................. 12

*Hormel Foods Corp. v. Jim Henson Prod.*, Inc.,
73 F.3d 497 (2d Cir.1996) ................................................................................................... 21

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
191 F.3d 813 (7th Cir. 1999) ................................................................................................. 6

*Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.*,
902 F. Supp. 805 (N.D.Ill.1995) ......................................................................................... 15

*Installation Servs., Inc. v. Elec. Rsch., Inc*
04 C 6906, 2005 WL 645244 (N.D. Ill. Mar. 21, 2005) .................................................... 11

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
540 F.2d 266 (7th Cir. 1976) ............................................................................................... 19

*Kastanis v. Eggstacy* LLC,
752 F. Supp. 2d 842 (N.D. Ill. 2010) .................................................................................. 18

*MacLeod v. Commonwealth Edison*,
2024 IL App (2d) 230237, ¶ 49, 248 N.E.3d 1133 ...................................................... 13, 16

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019) ................................................................................................. 1

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
No. 14 C 4957, 2015 WL 3637740 (N.D. Ill. June 11, 2015) ............................................ 11

*Nationwide Biweekly Admin., Inc. v. Superior Ct.*,
9 Cal. 5th 279, 462 P.3d 461 (2020) ................................................................................... 18

*Neuros Co. v. KTurbo, Inc.*,
698 F.3d 514 (7th Cir. 2012) ............................................................................................... 12

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir.1998) .............................................................................................. 21

*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.*,
19 Cal. App. 5th 258, 227 Cal. Rptr. 3d 862 (2018) ..................................................... 17, 18

*Sanderson v. Culligan Int'l Co.*,
415 F.3d 620 (7th Cir. 2005) ................................................................................................. 6

*Sara Lee Corp. v. Am. Leather Prods., Inc.*,
No. 97 C 4158, 1998 WL 433764 (N.D. Ill. July 29, 1998) .............................................. 21

*Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc.*,
586 F.3d 500 (7th Cir. 2009) ................................................................................................. 7

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*,
No. 05 C 3004, 2006 WL 952032 (N.D. Ill. Apr. 12, 2006) ......................................... 14, 15

*Siegel v. Levy Organization Development Co.*,
153 Ill. 2d 534, 180 Ill. Dec. 300, 607 N.E.2d 194 (1992).......................................... 13

*Smith v. Prime Cable of Chicago*,
276 Ill.App.3d 843, 213 Ill. Dec. 304 ................................................................................. 13

*SparkNet Commc'ns, L.P. v. Bonneville Int'l Corp.*,
386 F. Supp. 2d 965 (N.D. Ill. 2005) .............................................................................. 19, 21

*Stepan Co. v. Winter Panel Corp.,*
   948 F. Supp. 802 (N.D. Ill. 1996) ......................................................................................... 15
*Tierney v. Vahle,*
   304 F.3d 734 (7th Cir.2002) ................................................................................................... 5
*Ty, Inc. v. Jones Group,* Inc.,
   237 F.3d 891 (7th Cir. 2001) ................................................................................................ 19
*Underground Sols., Inc. v. Palermo,*
   188 F. Supp. 3d 717 (N.D. Ill. 2016) .............................................................................. 11, 12

## Statutes

14 U.S.C. 1114(1) ....................................................................................................................... 18
15 U.S.C. § 1125(a) .......................................................................................................... 6, 21, 22
815 ILCS 505 ........................................................................................................................ 13, 14
815 ILCS 505/10a(a) .................................................................................................................. 15
815 ILCS 510 .............................................................................................................................. 12
California Bus. & Prof. Code § 17200 ........................................................................................ 17

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 4, 5
Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 4
Federal Rule of Civil Procedure 9(b) ......................................................................................... 15

## Other Authorities

Lanham Act "False Advertising" Claims: What Is A Plaintiff to Do?,101 Trademark Rep. 1601 (2011) ................... 9

## I.    INTRODUCTION

Montway's allegations are meritless, nonactionable, and simply attempt to blame a competitor for its own shortcomings. Defendant Nexus and Plaintiff Montway have been direct competitors in the auto-transportation industry since 2015. Montway now weaponizes this litigation by using scare tactics to baselessly paint Nexus as a malicious actor. However, even if Montway could prove that Nexus is behind the allegedly malicious acts (and it cannot), those acts, i.e. "toxic backlinking", have never been found by a court to create liability, Congress has never addressed the practice by statute, and Google has publicly stated that the remedy for the practice is to do nothing.

Montway advances several novel and untested theories of liability for which Defendant has found no supporting case law, effectively attempting to create a new cause of action by bootstrapping its allegations onto existing statutory frameworks that do not apply. Montway's pleadings fail to satisfy substantial portions of the essential elements required for each of the claims asserted.

## II.   STATEMENT OF FACTS[1]

Montway filed this action on October 27, 2025, asserting false advertising, trademark infringement, deceptive trade practices, and related claims. See generally *Compl.* [2]

Nexus is a direct competitor to Montway in the Auto Transport Industry. *Compl.* at ¶ 22. Montway alleges that Nexus engaged in a 'smear campaign' over the past eight months. *Id*. Montway alleges that Nexus has allegedly created thousands of websites with "toxic backlinks" [3]

---

[1] Defendants deny the bulk of Plaintiff's allegations, but take them as true for purposes of this motion. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).
[2] Docket number 1.
[3] The term that Google uses to categorize the practice alleged in Plaintiffs complaint is "Link Spam", not "Toxic Backlinks" throughout its policies.

1

to Montway's website, and that those links are hosted on sites promoting unsavory and unlawful goods, and by doing so has mislead consumers and damaged Montway's Search Engine Optimization ranking and brand image. *Id*. at ¶¶ 22-29.

Montway alleges that beginning in April 2025 it observed a "drastic rise" in so-called "toxic backlinks" pointing to Montway's websites, and alleges more than 500 such links in April 2025. *Compl.* at ¶ 26. Montway alleges that "more than 2,350" backlinks were found between April and October 17, 2025. *Compl.* at ¶ 27. The backlinks are alleged to appear on numerous unrelated third-party websites and domains, including sites such as "sweedishwhoresa.blogspot.com/" and "sexygirlsphotos.net/domain-list-498," among many others listed in Exhibit 2 of the complaint. *Id*.; *Compl. Ex 2.* However, many of the websites listed in Exhibit 2 do not appear to promote "unsavory and unlawful goods" and are simply innocuous links such as "http://www.newdirectory.org/domain-list-523". Further, after reviewing Plaintiff's Exhibit 2 Defendant is unable to locate a single reference or link to Montway on an "unsavory and unlawful" website. The source of Plaintiff's Exhibit 2 is not identified in its Complaint.

The content of the links provided in Plaintiff's Exhibit 2 also appears to be incomprehensible and spam-like. Often the content is in a foreign language. A representative example of the content found in Plaintiff's links is depicted below:



Montway attributes the alleged backlinks to Nexus based solely on statements from one former employee, who purportedly approached Montway, claimed to have attended internal meetings, and stated he "personally saw a document" listing websites for the alleged campaign. *Compl.* at ¶ 31. Montway also pleads, on information and belief, that Nexus retained an individual named Vishal Parmar, an SEO strategist associated with "MindInventory," to conduct a backlink campaign and that Mr. Parmar engaged in "toxic backlinking" at Nexus's direction. *Compl.* at ¶ 22,23.

Montway alleges the backlinks contained irrelevant and illicit anchor text pointing to Montway's site. *Compl.* at ¶ 27. Montway also alleges, on information and belief, that Nexus used

Montway's "MONTWAY" and "MONTWAY AUTO TRANSPORT" marks in "commercial advertising," without identifying any specific Nexus-authored advertisements beyond the backlinks. *Compl.* at ¶ 39. Montway does not allege in its complaint that Nexus used Montway's name or marks to direct traffic to Nexus' website. Finally, Montway alleges that it contacted Nexus on October 10, 2025 via counsel with a cease-and-desist letter, that Nexus did not respond, and it alleges that backlinks increased thereafter. *Compl.* at ¶ 32.

Regarding alleged harm, Montway asserts reductions in SEO ranking and clicks, and claims it has lost goodwill and potential customers. *Compl.* at ¶ 30. The extent of the factual assertions presented on this issue is a cropped screenshot of what Defendant believes is the Google Search Console depicting clicks, which has numerous tabs and options that filter the diagram, none of which are visible in the presented photo. *Id.* Montway provides no specific facts that demonstrate a causal link between the alleged backlinks and loss of website clicks. In fact, the complaint itself offers an alternative explanation: Montway's own timeline shows its traffic decline coincided with Google's spam-algorithm update. *Id.*

## III.    ARGUMENT

### a.  Legal Standard

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the complaint in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The Federal Rules of Civil Procedure state that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 573 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  A complaint must include enough factual allegations to "raise a right to relief beyond the speculative level." *Id*. at 555. The Court

4

should identify and disregard the pleader's conclusory assertions and then determine if the "well pleaded factual allegations...plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal, 556 U.S. 662,* 678-9 (2009).

. The court may also consider documents presented with the motion to dismiss if they are referred to in the Plaintiff's complaint that are central to their claim, without converting the 12(b)(6) motion into a motion for summary judgment. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ("The [incorporation-by-reference] doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'") *Id*. quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002).

### b. Montway's claims fail

Defendant moves to dismiss the Complaint in its entirety because each claim relies on conclusory assertions and formulaic recitations of elements, but lacks the specific factual allegations necessary to state a plausible claim for relief.

Montway pleads 'likelihood of confusion' and 'misrepresentation' with no facts showing when, where, or how any deception has occurred or is likely to occur. As an initial example both the Lanham Act counts, and Illinois Uniform Deceptive Trade Practices Act counts merely recite statutory language without any particularized facts tying the alleged conduct to required elements.

Similarly, the trademark infringement count states simply "Nexus's use of the "MONTWAY" mark in connection with its toxic backlinking campaign is likely to cause confusion, mistake and deception" Montway presents no factual connection to any of the acts alleged in this count to the injury it claims it has, and will continue to, suffer.

Montway's causation theory is at best speculative. In its complaint Montway alleges that the decline in its "year-over-year clicks" coincided with Google's rollout of its spam update. In

this way Montway acknowledges a more likely alternative for the decline in its, but fails to give any credence to this possibility. Montway provides no factual link between the backlinks and any specific harm, which defeats any claims of plausibility of an injury caused by deception.

### c. Count I - Lanham Act False Advertising (15 U.S.C. § 1125(a))

To prevail for false advertising under the Lanham Act, a plaintiff must prove (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813,819 (7th Cir. 1999); *see B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 971 (7th Cir.1999). The plaintiff must demonstrate that the false statements made fall into one of two categories: statements that are literally false, and those that are literally true or ambiguous but misleading. *See Dyson, Inc. v. Sharkninja Operating LLC,* 259 F. Supp. 3d 816, 829 (N.D. Ill. 2017). However, actionable statements are limited to those made in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B); *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005).

Montway's Complaint alleges that Nexus has placed Montway's mark on websites with misleading anchor text and content, which they allege causes confusion and misrepresents Montway's services. However, Montway pleads almost none of the elements required for a false-advertising claim.

### i. No false statements of fact.

Literal falsehood allows a plaintiff to proceed under the Lanham Act without needing to demonstrate evidence that consumers were misled, or likely to be misled. As the Seventh Circuit has explained, a literally false statement is one that is "indisputably false" or "bald-faced, egregious, undeniable, [and] over the top." *Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512-13 (7th Cir. 2009). Only an unambiguous message can be literally false." *Buetow v. A.L.S. Enterprises, Inc.,* 650 F.3d 1178, 1185 (8th Cir. 2011). "Section 43(a)(2) of the Act prohibits the use of false or misleading statements or representations of fact in commercial advertising" *Abbott Lab'ys v. Mead Johnson & Co*., 971 F.2d 6, 13 (7th Cir. 1992).

The anchor texts do not convey a message that conforms with the literally false standard that courts have applied in other circumstances. Many cases center around literal falsehood in the defendants advertising. Examples are claims that focus on the labeling of packages, or in disclosures, where the party advertising has a falsehood in its actual advertising. *Id*. (finding that description of a product as "rice-based" claims were literally false because the product contained no actual rice); *Bidi Vapor, LLC v. Vaperz LLC*, 543 F. Supp. 3d 619 (N.D. Ill. 2021) (Holding that an ad stating the defendant's product contains 6% nicotine is not indisputably or undeniably false because both parties agree that nicotine degrades over time).

Montway has failed to plead that the toxic backlinks or anchor text constitute false statements of fact *about its own or another's product*. Montway identifies no false factual statement by Nexus. The alleged "statements," being the toxic backlinks or link spam, are not factual assertions about any product or service, they are merely hyperlinks. Without a concrete false factual statement, Montway's claim fails at the threshold.

### ii. No Plausible Allegation of Deception of fact.

Montway fails to allege that any purported statement actually deceived or tended to deceive a substantial segment of its audience. Even a quick glance at the links provided by Plaintiff reveals that they are not intended to sell anything and are not directed at any purchasing audience. Even in the light most favorable to Plaintiff the only audience for the alleged backlinks they plausibly plead is Google's algorithm, not consumers.

Based on the pleadings no plausible deception has been alleged. The list of links cited to in the complaint contains numerous websites that are gibberish and cannot be said to be targeting consumers. Plaintiffs have failed to plead that Google has been deceived because they are unable to plausibly plead that Google's algorithm has been deceived. [4]

The existence of backlinks or anchor text does not demonstrate consumer confusion. A hypothetical user who clicks on a link listed on a spam website and arrive at Montway's legitimate website would immediately become aware of the disconnect between the link and Montway's services.

### iii. No Materiality of Influence on Purchasing Decisions

False advertising requires that the alleged deception be material, that is, likely to influence a purchasing decision.

In considering the materiality of a reputation courts consider multiple factors including "(1) consumer motivation, which typically considers the importance of the product or service feature to which a misrepresentation is directed; (2) consumer reliance, which considers how a

---

[4] Google denies that these spam links are actually impactful on SEO optimization. For instance, in the March 3, 2024 English Google SEO Office hours recording a Google representative stated that when confronted with sabotage via toxic links "I know what I would do: I'd ignore those links. Generally, Google is really, REALLY good at ignoring links that are irrelevant to the site they're pointing at." The direct advice from Google regarding toxic links or link spam is to *ignore it,* and should a party be concerned, they can disavow the links to prevent perceived harm to their SEO optimization.  Google Search Central Office Hours, March 3, 2024, at https://developers.google.com/search/help/office-hours/2024/june#how-to-alert-google-of-sabotage-via-toxic-links

misrepresentation is used; and (3) consumer concern, which considers the extent to which a misrepresentation departs from the facts." *ExeGi Pharma, LLC v. Brookfield Pharms., LLC*, 663 F. Supp. 3d 880, 905 (E.D. Wis. 2023), reconsideration denied, No. 20-CV-192-JPS, 2023 WL 4352452 (E.D. Wis. July 5, 2023) (citing Vincent N. Palladino, Lanham Act "False Advertising" Claims: What Is A Plaintiff to Do?, 101 Trademark Rep. 1601, 1626 (2011)). Importantly courts only require a likely, as opposed to an actual, effect on consumer choice." e-ImageData Corp. v. Digit. Check Corp., No. 15-CV-658, 2018 WL 1411226, at *3 (E.D. Wis. Mar. 21, 2018).

Montway pleads no facts showing the alleged links influenced any purchasing decisions. The alleged link-spam and SEO manipulation are directed solely at Google's automated search algorithms, which do not purchase services, make commercial decisions, or function as a relevant consumer audience. Montway alleges no facts showing that any consumer was motivated by, exposed to, or relied upon any supposed misrepresentation, nor does it plead that consumers would have any concern about a departure from the truth based on backlinks they never saw. Because the complaint lacks allegations supporting consumer motivation, reliance, or concern, Montway has not pleaded materiality and so the claim must fail.

### iv.   No alleged or Plausible injury

Finally, Montway has failed to allege that it has been or is likely to be actually injured by the "statements." Montway's alleged injuries are entirely speculative. While Defendant understands that any injury under these facts would be difficult to quantify, the complaint relies entirely on speculation. Even accepting Montway's allegations as true, there is no factual basis to infer that Montway has suffered a loss of customers, goodwill, or reputation that is attributable to Nexus. In the absence of any instances where the alleged backlinks can be accredited to Nexus, Montway has failed to adequately plead that Nexus is the cause of its injury. *Crabtree v. Experian*

*Info. Sols., Inc.,* 948 F.3d 872 (7th Cir. 2020) ("It is not enough to say that your reputation was harmed without explaining how.").

As discussed above, consumers are not being deceived or confused, and so Montway is not losing consumers. The hypothetical steroid user trying to purchase steroids on an incompressible spam website isn't deciding not to purchase Montway's services simply because they are unexpectantly linked to Montway. Montway alleges harm to Google rankings but does not explain specifically how this is done because it cannot. The misleading graph of clicks presented in the complaint does nothing to explain how backlinks have affected search rank and is not factual support for lost business based on search rankings. Montway in only conclusory manner alleges that the backlinks have caused their ranks to drop, and that it is at risk of being penalized by Google. However the policy cited to in Montway's complaint contradicts their theory. *Compl.* at ¶ 25. Google's link spam policy does not say that if a third party is spamming your link across the web, that the website of the party being spammed will be delisted. The policy is directed at websites that abused link spam and buying of selling of links to benefit their *own* website. To allege harm under this policy, Montway would need to plead that Nexus was somehow making it look like Montway was creating the link spam itself.

### v. Not "Commercial Advertising or Promotion"

Montway fails to allege in its complaint any false or misleading statement by Nexus that would be considered "commercial advertising or promotion" to be actionable under the Lanham Act. This Court has previously noted that commercial advertising and promotion "must involve commercial speech by a defendant, for the purpose of influencing customers to buy the defendant's goods or services, and 'must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.'" *Installation Servs., Inc. v. Elec. Rsch., Inc.*, No.

04 C 6906, 2005 WL 645244, at *2 (N.D. Ill. Mar. 21, 2005) (Citations omitted). The Seventh circuit has defined promotion as "a systematic communicative endeavor to persuade possible customers to buy the seller's product." *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *20 (N.D. Ill. June 11, 2015). In *Installation Servs., Inc.* the Court found that false statements made as face-to-face communications with a customer did not constitute commercial advertising or promotion under the Lanham Act. Citing the Second Circuit, the Court explained, "the touchstone ... is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of a widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement." (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc*., 314 F.3d 48, 57 (2d Cir.2002)). The alleged backlinks, while not face-to-face statements, are more akin to face-to-face communications than a widespread advertising campaign. The backlinks are essentially an attempted communication directly to Google in an attempt to persuade Google as to the quality of that link. That communication, embedded in an otherwise incomprehensible jumble of text that only Google could interpret, cannot be plausibly alleged to serve any other purpose.

The alleged backlinks are also not "a systematic communicative endeavor to persuade possible customers to buy the seller's product." They are automated or algorithmic artifacts of how websites interconnect on the internet, not intentional marketing communications. They do not convey a coherent message or attempt to influence consumer purchasing decisions and therefore fall outside the scope of what constitutes "promotion."

The Seventh Circuit has recognized that certain internet communications can qualify as commercial advertising or promotion. However, those cases involve situations where a party publishes content on its own website directed at potential customers. *Underground Sols., Inc. v.*

11

*Palermo*, 188 F. Supp. 3d 717, 726 (N.D. Ill. 2016) (holding that creating PowerPoint presentations and performing presentations constituted advertising or promotion); *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012) (holding that posting false statements about a competitor on a company website constitutes advertising and promotion). This is because such activities involve the dissemination of information to anonymous members of the purchasing public. *Palermo* , 188 F. Supp. 3d 717, 726. The same cannot be said here. As discussed above, there is no dissemination to any relevant purchasing audience, rather, the alleged backlinks are directed at Google's algorithms. Moreover, there is no allegation that Nexus has hosted or published any material using Montway's name to advertise or promote its own services over those of Montway.

### d. Count II – Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510)

UDTPA claims mirror Lanham Act false advertising. *Holbrook Mfg LLC v. Rhyno Mfg. Inc.,* 497 F. Supp. 3d 319, 332 (N.D. Ill. 2020).[5] The UDTPA is "generally thought indistinguishable from the Lanham Act," *CDOC, Inc. v. Gradient Ins. Brokerage, Inc*., No. 20 CV 01396, 2025 WL 3050980 (N.D. Ill. Sept. 16, 2025) (Citing *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012)). The elements for False Advertising under the Lanham act are laid out extensively above, Because Montway fails to plead the Lanham Act elements, the UDTPA claim fails for the same reasons.

The complaint also fails to provide clear allegations that Nexus has "passed off" its services as Montway's or that any deceptive statements were made to actual or potential Illinois customers. The pleadings allege that the backlinks constitute sponsorship or approval which leads to customer confusion, but again presents no instances of such confusion. Rather, the harms named in the

---

[5] See discussion of Lanham Act Claims: *Supra* section c.; *Infra* section g-h.

pleadings are limited to algorithmic harms and reputational association via links, which cannot be construed as deceptive trade practice addressed towards actual buyers.

### e.  Count III – Illinois Consumer Fraud Act (815 ILCS 505)

To prevail under the Illinois Consumer Fraud and Deceptive Business Act for deceptive conduct a Plaintiff must show: a deceptive act, intent, nexus to trade/commerce, and actual damages caused by the deception. *Caracci v. Am. Honda Motor Co., Inc.,* 726 F. Supp. 3d 840, 846 (N.D. Ill. 2024). Importantly Illinois courts have held that the Consumer Fraud Act can be used as a private cause of action "only where a plaintiff can show that he suffered damage as a result of unlawful conduct proscribed by the statute." *Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 859, 213 Ill. Dec. 304, 658. Courts view the elements of a consumer Fraud Act claim under an objective standard that measures "the materiality of the consumer's decision by what a reasonable consumer would regard as important in making a decision. *Ash v. PSP Distribution*, LLC, 2023 IL App (1st) 220151, ¶ 31, 226 N.E.3d 748, 755. Illinois courts have moved away from requiring actual reliance, and have instead shifted to focus on causation. *MacLeod v. Commonwealth Edison*, 2024 IL App (2d) 230237, ¶ 49, 248 N.E.3d 1133, 1150, appeal denied, 244 N.E.3d 221 (Ill. 2024) (citing *Siegel v. Levy Organization Development Co*., 153 Ill. 2d 534, 542, 180 Ill. Dec. 300, 607 N.E.2d 194 (1992))

Moreover, claims under the Illinois Consumer Fraud Act "must be pled with the same specificity as that required under common law fraud," and must conform with the heightened pleading standards of Rule 9(b). *Davis v. G.N. Mortg. Corp*., 396 F.3d 869 (7th Cir. 2005) (quoting *Elson v. State Farm Fire & Cas. Co.,* 295 Ill.App.3d 1, 229 Ill. Dec. 334, 691 N.E.2d 807, 816 (1998)). Thus, Plaintiffs were required to plead the who, what, when, where, and how, of the

alleged fraud. *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05 C 3004, 2006 WL 952032 (N.D. Ill. Apr. 12, 2006).

Montway's complaint fails to properly allege that deceptive practices have occurred, or any reliance on any deception. Again it is simply not plausible that any consumer is visiting a spam website and choosing not to purchase Montway's services based on that website. And Montway does not and cannot sufficiently plead that Google is deceived by the link spam, because it is not deceived. Google is also not alleged to be a consumer of Plaintiff's services.

### i. No deceptive act or Practice

Montway pleads no deceptive act recognized under ICFA or UDTPA. Like many other consumer protection statutes, the plaintiff must "prove that the relevant [practices or acts] are likely to deceive reasonable *consumers*." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). (emphasis added) (addressing consumer protection laws in 12 different states and noting they all require this of a plaintiff). Many courts follow this same reasoning, the deceptive act by the defendant must be aimed a deceiving *the consumer* and inducing them to purchase something different than advertised. See *Chandler v. American General Finance, Inc.*, 329 Ill.App.3d 729 (2002) (Bait and switch advertising targeted at unsophisticated borrowers was considered deceptive) (collecting cases).

Montway has failed to plead any instance in which consumers were specifically targeted or induced to purchase Nexus's products or not purchase Montway's. The alleged backlinks target algorithms, not consumers. Because the relevant audience of these backlinks is Google's automated systems, not the general public, Montway has not alleged any deceptive act or practice that would constitute a violation of 815 ILCS 505.

14

Montway does not plead the who, what, when, where, and how required by Federal Rule of Civil Procedure 9(b). *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05 C 3004, 2006 WL 952032 (N.D. Ill. Apr. 12, 2006) (dismissing deceptive marketing claims where plaintiffs failed to allege when or where class members were actually deceived). Montway's pleadings fail to make any concrete assertions of deception, and so fall far short of the specificity required under Rule 9(b). Absent factual allegations showing confusion or reliance by consumers or Google, and identifying when such deception occurred, this count cannot stand and must be dismissed.

Under the ICFA "proof of a public injury, a pattern, or an effect on consumers generally shall not be required." 815 ILCS 505/10a(a); *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 806 (N.D. Ill. 1996). "However, the decisions of this district have consistently held that the 1990 amendment to the Consumer Fraud Act 'did not eliminate the requirement of a connection to consumers.'" *Stepan Co.,* 948 F. Supp. 802, 806 (citing *Athey Products,* 89 F.3d at 436–37; *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.,* 902 F. Supp. 805 (N.D.Ill.1995)).

Montway has failed to adequately plead any connection to real consumers in its complaint. Moreover, many of the webpages cited in Montway's complaint are incoherent or nonsensical, containing no genuine advertising or consumer-facing content. To illustrate the absurdity of these sites, one of the websites cited in Plaintiff's complaint, "https://santaconchicago.com/page/76/"[6] links to an article titled "Excessive Blind levels in addition to Excessive Incentives: Researching the earth connected with VIP On the net Gambling house Port Gambling on," which contains text such as:

---

[6] Defendant was unable to locate any mention of Montway in the text of this webpage, or in its source code. While not all of the websites are like this a substantial portion are.

"This attract likewise lies in this likely incentives. Better blind levels show that victories is usually significantly much larger, building a far more strong in addition to enjoyable game playing setting. Intended for people exactly who delight in risk-taking, this mix off exclusivity in addition to excessive agreed payment likely helps make VIP port gambling on in particular pleasing."

This type of incoherent, spam-generated material underscores that the alleged backlinks are not aimed at influencing consumers and therefore cannot form the basis of a claim under the Illinois Consumer Fraud Act. The complaint centers on allegations that the defendant engaged in conduct designed to deceive Google's search algorithms, rather than to mislead consumers or the plaintiff directly. In other words, even viewed in the light most favorable to the plaintiff the supposed deception was aimed at manipulating how Google indexes or ranks websites, not at inducing reliance or confusion among the public that could cause harm to Montway.

The ICFA requires both cause-in-fact and legal cause. *MacLeod v. Commonwealth Edison*, 2024 IL App (2d) 230237, 248 N.E.3d 1133, appeal denied, 244 N.E.3d 221 (Ill. 2024). Cause-in-fact is the "but for" cause, meaning the relevant inquiry is whether the harm would have occurred absent the defendant's conduct. *Id.* Legal cause requires that the alleged injury be a foreseeable consequence of the alleged misrepresentation. *Id.*

Montway fails to plead that Nexus was the proximate cause of any alleged losses, whether financial or related to search engine rankings. Instead, the complaint merely asserts in conclusory fashion that Nexus's conduct resulted in diminished website engagement, without offering factual support or addressing alternative explanations for the alleged decline. Montway's own allegations defeat causation. The complaint expressly admits that its website traffic decline 'coincided' with

Google's July–September 2025 spam-algorithm update. That admission identifies a far more direct and obvious cause of the alleged downturn, and it leaves no factual basis to infer that Nexus, rather than Google's update, caused any injury. See generally *Compl.* Montway alleges no facts showing that Nexus, rather than broader market conditions, caused its alleged downturn. Its theory rests on speculation, not a well-pleaded causal connection.

### f.  Count IV – California Unfair Competition Law (Bus. & Prof. Code § 17200)

Montway has not established anything beyond a speculative relationship with California. Both parties are located in Illinois and Montway has attempted to plead claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Act. The Court should apply Illinois law, but even if California law is applied Montway has failed to state a claim. California Business & Professions Code § 17200 prohibits as unfair competition "any unlawful, unfair or fraudulent business act or practice. ..." and is read in the disjunctive, thus establishes three distinct and independent tests for determining unfair competition. *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.*, 19 Cal. App. 5th 258, 227 Cal. Rptr. 3d 862 (2018).  Montway fails to sufficiently plead any prong of the UCL.

Under the unlawful prong, discussed at length in this brief, the relevant conduct here is not tethered to any "underlying constitutional, statutory or regulatory provision" *Id*. This is because Montway fails to tie its underlying theory of liability to any of the statutes it claims apply. As the California Supreme Court has explained the "unlawful" prong borrows violations of other laws, and treats them as separately actionable under the unfair business practice law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999). Despite its breadth, Montway pleads no underlying violation necessary for UCL liability.

Under the Unfair prong, California courts utilize two tests, depending on whether the case involves consumers or direct competitors, when a case involves direct competitors as here, the courts apply the *Cel-Tech* test. *Nationwide Biweekly Admin., Inc. v. Superior Ct*., 9 Cal. 5th 279, 303, 462 P.3d 461, 471 (2020). The unfair prong requires conduct tethered to a legislative policy or actual harm to competition. *Cel-Tech Communications, Inc*., 20 Cal.4th 163 (1999). Here, as discussed, there is no tethering, nor has Montway provided any factual support for actual or threatened impact on competition. Montway's has failed to allege that there is an actual or threatened impact on competition, because they have failed to provide factual support that the impact of the backlinks has had any real effect on its SEO ranking, and only assert that their "clicks" have declined.

The fraudulent prong requires conduct likely to deceive the a "reasonable consumer.'" *Patricia A. Murray Dental Corp*, 19 Cal. App. 5th 258, 271 (internal citations omitted). Montway alleges no facts showing any consumer was or could be deceived by the alleged backlinks, because again backlinks target algorithms, not the consuming public.

### g. Count V – Federal Trademark Infringement (14 U.S.C. 1114(1)

Under the Lanham Act, to succeed on a trademark infringement claim, plaintiff must demonstrate that: (1) the marks are protectable; (2) defendant used the marks in commerce; and (3) their use of the term is likely to cause confusion. See *Kastanis v. Eggstacy* LLC, 752 F. Supp. 2d 842, 848 (N.D. Ill. 2010).

Defendant concedes that Montway's mark is protectable and for the sake of this motion use in commerce is assumed. However, Montway has failed to adequately plead that Nexus used Montway's in a way that is likely to cause confusion.

18

### i. Likelihood of confusion

The factors Courts looks at to evaluate whether a likelihood of confusion exists in a trademark case are: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiffs mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs. *Ty, Inc. v. Jones Group*, Inc., 237 F.3d 891, 897-98 (7th Cir. 2001); see *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, Inc., 560 F.2d 1325, 1330 (7th Cir.1977). "[N]o single factor is dispositive" and "courts may assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important" *AutoZone, Inc. v. Strick*, 543 F.3d 923 (2008). The test is characterized as "an equitable balancing test" *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660 (2001). Infringement occurs "when the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public." *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

Courts within the Seventh Circuit have repeatedly found no likelihood of confusion where the relevant consumers are sophisticated and exercise a high degree of care in making purchasing decisions. *Epic Sys. Corp. v. YourCareUniverse, Inc.*, 244 F. Supp. 3d 878 (W.D. Wis. 2017) (purchasers of software would exercise care in making their purchasing decisions); *SparkNet Commc'ns, L.P. v. Bonneville Int'l Corp.*, 386 F. Supp. 2d 965 (N.D. Ill. 2005) (finding that the plaintiff has failed to demonstrate that consumers are unlikely to exercise care in selecting the radio station they are listening to). Likewise, purchasers of auto transportation services are likely to exercise significant care when selecting a provider. This is intuitive: such services often cost thousands of dollars, and the items being transported, personal vehicles, carry substantial monetary

19

and emotional value, making consumers highly attentive to reliability, safety, and service quality when making their choice.

Montway pleads no actual or likely confusion and relies instead on the conclusory assertion that Nexus's alleged "toxic backlinking campaign is likely to cause confusion, mistake, and deception," without providing any supporting facts. *Compl.* ¶ 71. The complaint does not identify a single consumer who was misled, nor does it explain how the alleged backlinks could plausibly result in confusion about Montway's services. Indeed, there is no reasonable basis to believe that a consumer clicking a link titled "buy steroids online," or any similarly unrelated content, would be deceived into thinking it pertains to vehicle transportation services offered by Montway.

Auto transport consumers use a high degree of care, and are unlikely to act impulsively when entrusting a valuable personal vehicle to a shipping company and spending thousands of dollars on the service. It is therefore implausible that a consumer exercising such a high level of care would be misled by nonsensical or spam-generated links wholly unrelated to the industry.

Unlike a traditional trademark infringement case, this is not a situation where consumers are confusing the defendant's products or services with those of the plaintiff. The alleged backlinks target search algorithms, not consumers. Thus, any supposed "deception" operates at the level of automated indexing, not human misunderstanding. Without specific allegations of consumer-facing confusion, deception, or reliance, Montway's claims fail to state a plausible cause of action under the Lanham Act.

### h. Count VI – Federal Trademark Dilution (15 U.S.C. § 1125(c))

There are four elements to a Trademark Dilution Claim: (1) the Mark is famous; (2) the Mark was adopted by Defendant after the Mark became famous; (3) Defendant's use of its slogans

causes dilution of the Mark; and (4) Defendant's use of its slogans is commercial and in commerce. See *SparkNet Communications, L.P. v. Bonneville Int'l Corp*, 386 F. Supp. 2d 965,978 (N.D. Ill. 2005). Furthermore, under 15 U.S.C. § 1125(c), dilution of a trademark's distinctiveness generally occurs when consumers are led to mistakenly associate the plaintiff's famous mark with the defendant's inferior product or service, or when a famous mark appears on different goods and services and therefore no longer serves as a unique identifier of the plaintiff's product or service. *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1100 (N.D. Ill. 2016); *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 523 (N.D. Ill. 2011).

Dilution occurs either by blurring or tarnishment. *Eli Lilly & Co. v. Nat. Answers, Inc*., 233 F.3d 456, 466 (7th Cir. 2000). Montway appears to be attempting to state a claim for tarnishment, but fails to make a claim for dilution by either method. Dilution by tarnishing occurs when a junior's mark is so similar to a famous mark that it causes consumers to mistakenly associate the famous mark with the defendant's inferior or offensive product. *Id.* citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 n. 7 (9th Cir.1998). Dilution by blurring, occurs when "consumers ''see the plaintiff's mark used on a plethora of different goods and services,' ... 'raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.''" *Id.* (quoting *Hormel Foods Corp. v. Jim Henson Prod.*, Inc., 73 F.3d 497, 506 (2d Cir.1996); *see also Sara Lee Corp. v. Am. Leather Prods., Inc.,* No. 97 C 4158, 1998 WL 433764, at *11 (N.D. Ill. July 29, 1998) *"*Dilution by blurring occurs where 'the defendant uses or modifies the *plaintiff's trademark* to identify the *defendant's goods and services*, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." (citations omitted).

Assuming Montway's mark is famous, the claim still fails under 15 U.S.C. § 1125(c). Montway does not allege Nexus adopted or used its mark after it became famous, nor does it allege that Nexus used Montway's mark *in commerce* or in a *commercial* manner, as the statute requires. There is no allegation that the use of "Montway" in backlinks was intended to sell Nexus services. Further, Montway identifies no facts showing that any alleged use caused dilution of the mark's distinctiveness.

There is no allegation supporting dilution by tarnishment, because Montway does not allege any instances where consumers have mistakenly associated any inferior, offensive, or unrelated products on third-party websites with Montway's services, nor is there any allegation that Nexus's mark is so similar to a mark that it causes consumers to mistakenly associate the famous mark with the defendants.

Instead, Montway asserts only that the mere existence of backlinks containing the word "Montway" harms its reputation and goodwill, without alleging that Nexus used a similar mark to promote competing services or consumer exposure. Thus, tarnishment and blurring are not plausibly alleged.

### i. Count VII – Injunctive Relief

In the absence of a valid cause of action, Montway cannot demonstrate a likelihood of success on the merits, and thus no injunction should be issued. A preliminary injunction requires, at minimum, a plausible underlying claim; where the pleadings fail to state one, the analysis necessarily ends. Across all counts, Montway has not pleaded any instance of consumer deception, confusion, or lost business that is traceable to Nexus or to the alleged backlinks. Instead, Montway relies on speculative and conclusory assertions, without identifying any consumer who was misled, any transaction diverted, or any concrete harm attributable to Nexus's conduct. Without factual

allegations linking Nexus to a cognizable injury, Montway cannot satisfy the threshold requirements for injunctive relief.

## IV.    CONCLUSION

Montway's claims are meritless and unsupported by law or fact. Nexus does not engage in "toxic backlinking," nor does it infringe Montway's trademarks in any manner. But even if Nexus did engage in the actions alleged, Montway has failed to state a claim. Rather than identifying actionable conduct, Montway attempts to shift responsibility for its own shortcomings onto a direct competitor with whom it has competed since 2015, and whom it has repeatedly sought to acquire. Montway's novel and untested theory of liability finds no support in existing case law, and its attempt to retrofit these allegations into established statutory causes of action fails as a matter of law. Because Montway has not sufficiently pleaded the essential elements of any of its claims, dismissal is warranted.

<div style="margin-left:50%">

Respectfully Submitted,

/s/ Sean M. Sharp
Sean Sharp (#6313964)
Kennedy Snyder (#6349995)
Atom Law Group, LLC
770 N. LaSalle Dr., Suite 700
Chicago, Illinois, 60654
(P) 312-493-8000
(F) 312-943-4984
ssharp@atom.law
ksnyder@atom.law

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on November 19, 2025.


<u>/s/ Sean Sharp</u>
Sean Sharp

24