**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**Eastern Division**

| | |
|---|---|
| MONTWAY LLC d/b/a MONTWAY AUTO TRANSPORT,<br><br>Plaintiff,<br><br>v.<br><br>NEXUS AT LLC d/b/a NEXUS AUTO TRANSPORT and GOKHAN ARKIN,<br><br>Defendants. | Civil Action No. 1:25-cv-13100<br><br>Hon. Matthew F. Kennelly |
| NEXUS AT LLC d/b/a NEXUS AUTO TRANSPORT,<br><br>Counter-Plaintiff,<br>v.<br><br>SGT AUTO TRANSPORT CORP., RADOS STEFANOVIC, MONTWAY LLC d/b/a MONTWAY AUTO TRANSPORT, and THOMAS GARTLAND, and TSVETELIN SAVOV,<br><br>Counter-Defendants. | |

**MONTWAY LLC'S MOTION TO COMPEL INTERROGATORY ANSWERS**

Plaintiff Montway, LLC moves to compel Defendants Nexus AT LLC and Ghokan "George" Arkin to provide full and complete answers to Montway's Interrogatories to Nexus Nos. 6, 8, 9, 10, and 13, along with Interrogatory to Arkin No. 2. Defendants have either refused to answer these interrogatories, or have provided superficial responses.

These interrogatory answers were among the items discussed during an extended series of meet and confers by teleconference involving counsel for Montway, SGT, and Defendants from

September 25 through October 5, and the parties were unable to come to an agreement regarding the interrogatories included in this motion.

## I. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Information may be discoverable without being admissible. *Id*. Where a party has failed to answer interrogatives or given an evasive or incomplete answer, the propounding party may move to compel a full and complete answer to the interrogatory. Fed. R. Civ. P. 37(a). Once the moving party establishes sought discovery is relevant, the burden shifts to the party resisting disclosure to demonstrate why its refusal to answer is justified. *Mendez v. City of Chicago*, No. 1:18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020).

## II. BACKGROUND

Montway filed this lawsuit alleging that Defendants engaged in a scheme to target its website, Montway.com, with "toxic backlinks"—links to Montway.com associating the website with unsavory or unlawful goods and services. ECF No. 50 ¶ 1. These links damage Montway's ranking on Google's search algorithm and confuse consumers about Montway's relationship with the services advertised through the toxic links. *Id*. Montway also named Ghokan "George" Arkin as a defendant, alleging that he improperly comingled asserts with Nexus. *Id*. ¶ 121.

Montway sought a preliminary injunction, presenting testimony from Rados Stefanovic, Nexus's former General Manager. Mr. Stefanovic testified that, in addition to the toxic backlinking, Mr. Arkin and Nexus engaged in other unsavory behavior, including scraping data from the websites of competing companies, including Montway, and in at least one instance, using

a fake name to gain access to the platform of a competitor—RunBuggy— to examine its design and acquire data. ECF No. 134-1 at 13:16-25, 33:17-34:2.

Mr. Arkin also testified at the injunction hearing, and denied engaging in toxic backlinking and surreptitiously accessing the RunBuggy platform. ECF No. 134-2 at 43:10-48:6. He did, however, admit to engaging in data scraping, though he framed it as "price shopping." *Id*. at 41:2-41:18. According to Defendants, Mr. Stefanvoic is the party responsible for the toxic backlinks affecting Montway's site, as part of a larger revenge scheme that also involved targeting Nexus's website with backlinks. ECF No. 87 at 9 (discussing the surge of backlinks directed at Nexus's website shortly after Montway first filed suit); ECF No. 86 at 2 n.1 (alleging a convoluted revenge scheme by Mr. Stefanovic). In its counterclaims, Nexus asserts that Mr. Stefanovic stole its trade secrets as part of this scheme, disclosing them to Montway. ECF No. 149 ¶¶ 70-77. According to Nexus, the motivation for this convoluted scheme is that Mr. Stefanovic borrowed money from Nexus and is now refusing to repay the loan, leading to legal proceedings in Serbia. *Id*.

## III. ARGUMENT

Montway served interrogatories targeting the RunBuggy account, Nexus's investigation of the toxic backlinks on its own website, and the proceedings Defendants are undertaking in Serbia against Mr. Stefanovic. Defendants have failed to provide adequate answers to these interrogatories, necessitating this motion to compel.

### A. Interrogatory to Nexus No. 13.

This interrogatory seeks "in detail, the grounds for and status of any criminal or civil proceedings initiated by Nexus against Rados Stefanovic, whether in the United States, Europe, or elsewhere." Nexus's response, entirely, is "Nexus and/or Gokhan Arkin have initiated civil and criminal proceedings against Rados Stefanovic in the Republic of Serbia arising from Mr.

Stefanovic's alleged misconduct against Nexus and Mr. Arkin, including alleged misappropriation of company funds and data. Those proceedings remain pending." Fernandes Decl. Ex. 1 at 6-7.

Defendants have made their Serbian law claims against Mr. Stefanovic a vital part of both their counterclaims and their defenses to Montway's allegations. ECF No. 149 ¶¶ 70-77; ECF No. 86 at 2 n.1. According to Nexus, Mr. Stefanovic borrowed approximately $100,000 from Nexus and has failed to repay the loan. ECF No. 149 ¶¶ 70-71. Nexus alleges that he both accused Nexus of engaging in the toxic backlinking, and allegedly disclosed Nexus's purported trade secrets to Montway, as part of a revenge scheme centered around Nexus's efforts to recover this loan. *Id.* ¶ 76; ECF No. 86 at 2 n.1.

Yet, Nexus refuses to provide more than a cursory answer as to the details of the proceedings in Serbia. All it says it that is has "initiated civil and criminal proceedings" in Serbia "arising from Mr. Stefanovic's alleged misconduct." This includes "alleged misappropriation of company funds and data." Fernandes Decl. Ex. 1 at 6-7.

Missing from Nexus's interrogatory answer are any details as to the status or particulars of its lawsuit or criminal proceedings brought against Mr. Stefanovic. At a minimum, Nexus should provide the case numbers of any civil or criminal cases pending against Mr. Stefanovic that it initiated, the dates it filed suit or made criminal complaints, along with the causes of action and procedural status of the case. Nexus should also be required to state whether it made criminal complaints against Mr. Stefanovic that were not acted on by Serbian authorities. Nexus made its Serbian proceedings against Mr. Stefanovic part of its claims and defenses by alleging these claims as motivation for Mr. Stefanovic's actions. ECF No. 149 ¶¶ 70-77; ECF No. 86 at 2. Having done so, it must provide the details of these proceedings. If, for example, Nexus's proceedings in Serbia are failing, that undermines Nexus's claims that these proceedings provided motivation for his

actions. The timeline is also probative here—if Defendants did not act in Serbia until Mr. Stefanovic had made contact with Montway or SGT, that undermines Defendants' revenge narrative and suggests the alternative conclusion: that any Serbian action is retaliation for Mr. Stefanovic's actions here.

**B. Interrogatory to Nexus No. 6**

Interrogatory No. 6 to Nexus seeks "in detail, the steps taken by Nexus to identify the source of the toxic backlinks affecting its website starting October 2025 and identify any steps taken by Nexus to address these toxic back links including but not limited to the use of Google's disavowal tool." Fernandes Decl. Ex. 1 at 5.

Nexus responds that it "monitors its search-ranking and backlink-profile metrics using the SEMrush platform and periodic SEO audits, and that Nexus, through Ana Miranovic, has used Google's disavow tool within Google Search Console to counteract toxic backlinks attaching to its domain, with Rados Stefanovic having performed that disavowal function prior to his departure in July 2025. In addition, Plaintiff is already in possession of the subpoena's issued by Defendants in this case." *Id*.

This answer is entirely deficient as to the steps taken by Nexus to identify the source of the toxic backlinks. Nexus asserts that the toxic backlinks "are nothing more than a revenge campaign initiated by Defendants' disgruntled former employee." ECF No. 86 at 2 n.1. Presumably, this conclusion was reached after doing at least some investigation, and not just a reflexive accusation of Nexus's own accuser. However, Nexus did not explain how it arrived at this conclusion. Instead, it merely states that Montway already has the subpoenas Defendants issued. This is not a description of the steps Nexus took to investigate the toxic backlinks affecting its website; it is an evasion of the interrogatory. Fed. R. Civ. P. 37(a).

The Court should order Nexus to provide a full answer, detailing the steps Nexus has taken to investigate the toxic backlinks affecting its website. To the extent Nexus cannot provide an answer because it did not seriously investigate these toxic backlinks, it should be forced to state so. A lack of investigation, or a perfunctory one, is probative of Nexus's responsibility for the toxic backlinks, and supports Montway's theory of the case—Nexus failed to conduct a thorough investigation into the backlinks because it already knew the answer.

**C. Interrogatory to Nexus No. 8**

This interrogatory seeks the identity of each person who had responsibility for or who performed price shopping or data scraping for Nexus during the period January 1, 2023 to present, including the job titles and primary responsibilities of each Person identified. Fernandes Decl. Ex. 1 at 5-6.

Nexus objects to this Interrogatory on the ground that it seeks information that is not relevant to the parties' claims or defenses. *Id*. However, the Court has already overruled this objection as presented at the preliminary injunction hearing. ECF No. 134-2 at 40:2-20. As Mr. Stefanovic testified, Mr. Arkin, through Nexus, was engaged in a series of "dirty" practices, including automated scraping of cost estimates from competitors' cost estimate calculators, accessing competitors' platforms through fake accounts, and eventually toxic backlinks. ECF No. 134-1 at 13:16-25. Mr. Arkin admits that the data scraping activity occurred, though he framed it as "price shopping." ECF No. 134-2 at 41:2-41:18.

Montway is entitled to discover who at Nexus engages in this practice, regardless of the label different witnesses put on it. The identities of the individuals at Nexus who participate in Mr. Arkin's ethically questionable schemes is highly relevant to identifying who at Nexus may have participated in other activity such as toxic backlinking.

**D. Interrogatories to Nexus Nos. 9 and 10 and Interrogatory to Arkin No. 2.**

These interrogatories seek information on an account on the RunBuggy platform about which there are currently at least three different stories being told: Mr. Stefanovic's, Mr. Arkin's, and Mr. Dimov's.

Interrogatory to Nexus No. 9 seeks the identity of "each Person who has or had access to the RunBuggy account depicted in PPX-19 from January 1, 2023 to present, including the job titles and primary responsibilities of each Person identified." Fernandes Decl. Ex. 1 at 6. Interrogatory to Nexus No. 10 seeks "in detail, the circumstances surrounding the creation of the RunBuggy account depicted in PPX-19 and its use by Nexus, including who ordered the account to be created, who created and had access to the email account in the name of "John Arkin," and why an email account was necessary to access the RunBuggy platform." *Id*. Interrogatory to Arkin No. 2 seeks "in detail, [Mr. Arkin's] relationship with George Dimov and Auto Transport Inc." Fernandes Decl. Ex. 2 at 3-4.

Defendants have refused to respond to these interrogatories on relevance grounds. *Id*.; Fernandes Decl. Ex. 1 at 6.

According to Mr. Stefanovic, the account was created at the behest of George Arkin by his friend, George Dimov. Mr. Dimov runs a used car dealership called Auto Transport Incorporated. RunBuggy is another company like Montway, Nexus, and SGT, that acts as a broker for automobile shipments. Mr. Arkin had his friend Mr. Dimov create an account on the RunBuggy platform under the name John Arkin, and then Mr. Arkin had Mr. Stefanovic create a video exploring the platform and discussing its features and seeing what data was present on the platform.

ECF No. 134-1 at 33:17-34:2; *see also* PPX-19.[1] Montway believes this was done because Nexus, and by extension George Arkin, wanted to enter into the business-to-business market and sought to gain access to the platform in order to see what his competitors were doing.

Under oath at the preliminary injunction hearing, George Arkin denied that this account was created at his request and claimed no knowledge of PPX-19. ECF No. 134-2 at 43:10-48:6.

Montway took the deposition of George Dimov, who told a third story regarding this RunBuggy account. According to Mr. Dimov, the account was created so that Nexus employees could review RunBuggy pricing and see if it made sense for AutoChoice Inc., Mr. Dimov's company, to ship with Nexus or RunBuggy. Fernandes Decl. Ex. 3 (Dimov Dep. Tr.) at 41:13-44:8. Mr. Dimov could not remember whose idea it was to create the email address "johnarkin@autotransportinc.com." *Id*. at 44:21-45:7. But Mr. Dimov also testified that the account was created to ease Nexus's access to gate passes to cars AutoChoice bought at auction. *Id*. at 42:15-43:2. He also admitted to creating other accounts for Mr. Arkin who calls him his "brother." *Id*. at 60:1-62:17, Exhibit 5.

Given the conflicting testimony over this issue, Montway is entitled to conduct further discovery to attempt to ascertain the truth of why this account was created, and its relevance to this case. At a minimum, the issue is relevant to witness credibility. Fundamentally, this case is a credibility contest between Mr. Stefanovic and Mr. Arkin; each tells a fundamentally different story about the actions of Mr. Arkin vis-a-via his competitors in the automobile transport industry.

According to Mr. Stefanovic, his former general manager, Mr. Arkin, regularly engaged in underhanded business practices—making fake accounts to scope out competition, scraping data

[1] PPX-19 was a video exhibit introduced at the preliminary injunction hearing on February 4, 2026 and provided to the Court on a flash drive as ordered at ECF No. 82.

from competitor's websites, and, ultimately, toxic backlinking. According to Mr. Arkin, this testimony is predominately[2] lies from a former disgruntled employee. Mr. Arkin's conduct is probative of a larger pattern of misbehavior—he induces friends and employees, such as Mr. Dimov and Mr. Parmar, to engage in unethical behavior in aid of his business, and then lies about it, or induces others to lie about their own involvement in his schemes. Such evidence is discoverable both as potential impeachment evidence at trial, and as evidence of plan, motive, and intention under FRE 404(b)(2). *See Batchelor v. City of Chicago,* No. 1:18-cv-8513, 2020 WL 13647794, at *6-7 (N.D. Ill. Nov. 17, 2020) (in wrongful conviction case, allowing discovery into other polygraph tests administered by defendants as both discoverable impeachment material and relevant under FRE 404(b)); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 630-31 (N.D. Ill. 2016) (discovery permitted into possible FRE 404(b) evidence of related wrongdoing without resolving admissibility question.)

Accordingly, the Court should order Defendants to supplement their responses to Interrogatories to Nexus Nos. 9 and 10, Interrogatory to Arkin No. 2 with full and complete answers.

## IV. CONCLUSION

The Court should grant Montway's motion to compel and order Defendants to provide full and complete answers to the interrogatories raised in this motion.

---

[2] As discussed with regard to Interrogatory No. 8, above, Mr. Arkin does admit he engaged in data scraping, though he characterized it as "price shopping." ECF No. 134-2 at 41:2-41:18.

Dated: October 22, 2026

*/s/Robert Fernandes*
Sanjay K. Murthy (ARDC 6279314)
Robert Fernandes (CA Bar No. 331780)
Taft, Stettinius & Hollister LLP
111 East Wacker Dr. Suite 2600
Chicago, IL 60601
Phone: (312) 527-4000
Fax: (312) 527-4011
SMurthy@taftlaw.com
Rfernandes@taftlaw.com

Samantha Picans (CO Bar No. 44852)
Briana D. Long (CA Bar No. 350098)
Taft Stettinius & Hollister LLP
675 15th St Suite 2300
Denver, CO 80202
Phone: (303) 299-8285
Spicans@taftlaw.com
BLong@taftlaw.com

*Counsel for Plaintiff Montway LLC d/b/a Montway Auto Transport*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was filed using the Court's CM/ECF filing system. That system will send notification of this filing to all counsel of record on October 22, 2026.

*/s/Robert Fernandes*
Robert Fernandes (CA Bar No. 331780)
Taft, Stettinius & Hollister LLP
111 East Wacker Dr. Suite 2600
Chicago, IL 60601
Phone: (312) 527-4000
Fax: (312) 527-4011
Rfernandes@taftlaw.com